IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CV-150-FL

| | | |
|---|---|---|
| HEMZA MENADE LEFSIH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CHAD F. WOLF, in his official capacity | ) | |
| as Acting Secretary of the Department of | ) | |
| Homeland Security; KENNETH | ) | |
| THOMAS CUCCINELLI, II, in his | ) | |
| official capacity as Acting Director of the | ) | |
| United States Citizenship and Immigration | ) | |
| Services; and VERNETTE THOMPSON | ) | |
| in her official capacity as Acting Field | ) | |
| Office Director for the Raleigh-Durham | ) | |
| Field Office of USCIS, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on defendants' motion to dismiss for lack of subject

matter jurisdiction and failure to state a claim upon which relief can be granted pursuant to Rules

12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (DE 28). The issues raised have

been fully briefed, and in this posture are ripe for ruling. For the reasons that follow, defendants'

motion is granted in part and denied in part.

**STATEMENT OF THE CASE**

Plaintiff commenced this action against defendants in the United States District Court for

the District of Columbia on November 22, 2019. With leave of court, plaintiff amended his

complaint on February 11, 2020,[1] alleging 1) request for de novo hearing pursuant to 8 U.S.C. § 1421(c); 2) violation of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., and implementing regulations; 3) violation of pertinent service of process regulations under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq.; 4) violation of the Fifth Amendment to the United States Constitution; and 5) estoppel. On April 1, 2020, the district court granted defendants' motion to transfer the case to this district. Defendants filed the instant motion to dismiss on May 15, 2020.

## STATEMENT OF FACTS

The facts alleged in the amended complaint may be summarized as follows. Plaintiff, an Algerian national, was allowed to immigrate to this country through the United States Citizenship and Immigration Services ("USCIS") Diversity Immigrant Visa Program. (Am. Compl. (DE 35) ¶¶ 8–11). Plaintiff subsequently sought United States citizenship by submitting an Application for Naturalization ("Form N-400"), to USCIS after residing in the United States as a lawful permanent resident for the requisite amount of time. (Id. ¶ 12). Plaintiff completed the application on his own answering each of the questions to the best of his ability and based on his understanding of the questions. (Id. ¶ 13).

Question 23 of Form N-400 asked whether plaintiff had "EVER been arrested, cited, or detained, by any law enforcement officer (including any immigration official or any official of the U.S. armed forces) for any reason?" (Id. ¶ 14). Plaintiff answered this question "No," when he had in fact been cited approximately 10 times by law enforcement officers in North Carolina for traffic infractions related to his operation of a taxicab.[2] (Id. ¶¶ 15–17). Plaintiff asserts that the

---

[1]     On June 12, 2020, this court allowed plaintiff to amend his first amended complaint nunc pro tunc to include an attachment plaintiff erroneously failed to include in his original filing.

[2]     Those citations were: 1) failure to maintain lane control; 2) failure to stop at a red light; 3) failure to produce

USCIS officer never inquired about any citations during the citizenship interview on November 30, 2015, but that he did not believe traffic citations were covered by question 23. (Id. ¶ 18). USCIS approved plaintiff's application on November 30, 2015, and scheduled him for an oath ceremony on December 14, 2015. (Id. ¶¶ 19–20).

On December 7, 2015, USCIS de-scheduled plaintiff's oath ceremony. (Id. ¶ 21). The next day, Homeland Security Investigations ("HSI") and Federal Bureau of Investigations ("FBI") agents interviewed plaintiff at his residence regarding his response of "No" to question 23 on his Form N-400. (Id. ¶ 22). Plaintiff explained that he answered "No" because he did not understand question 23 to include citations since he had not been detained by law enforcement but acknowledged after explanation from the agents that his answer to question 23 should have been "Yes." (Id. ¶¶ 23–24). The agents told plaintiff it was too late to make any changes to his Form N-400 and arrested him on December 11, 2015, for making false statements in an immigration application in violation of 18 U.S.C. § 1015(a). (Id. ¶¶ 25–26). Three days later, in discussing plaintiff's naturalization application with an Immigration and Customs Enforcement ("ICE") official, a USCIS officer explained question 23 as follows:

> [f]or example, we don't count speeding tickets, driving while license revoked, running a red, etc. We DO count DUIs, hit and runs, that sort of thing. The bigger issue the AFOD just pointed out [] is that we can't deny for false statements unless we confront them with evidence and they continue to deny it. You confronted him and he didn't deny anything. You asked why he didn't mention them at the interview and he gave you a lame response that we would have accepted.
>
> NONETHELESS, it WILL be denied, most likely because he can't establish [good moral character] while he's got this pending charge and sitting in jail.

(Id. ¶¶ 27–28; Email Correspondence (DE 35-1) at 1).

---

manifest; 4) overloaded/overcrowded vehicle; 5) failure to stop at a red light; 6) operating a tax in the corporate city limits of Raleigh without a valid license; 7) driving while license revoked; 8) speeding; 9) tax driver failure to remain within five feet of the cub; and 10) impeding traffic/sit/standing. (Id. ¶ 16 n.3).

On December 17, 2015, USCIS issued a notice re-opening the previously approved application of naturalization on its own initiative, and sent a notice of intent to deny ("NOID") plaintiff's naturalization application to plaintiff's residence. (Am. Compl. (DE 35) ¶ 29). The NOID explained that the intended denial was based on derogatory information received after the approval based on plaintiff's failure to disclose his traffic tickets in response to question 23 and allowed plaintiff 33 days for a response before USCIS rendered a decision. (Id. ¶¶ 30–31). Plaintiff alleges that USCIS mailed the NOID to his residence when it knew or should have known he was in federal custody, and that doing so violated federal law. (Id. ¶¶ 32–36). Since plaintiff did not receive the NOID, he was unable to respond within the required 33 day deadline. (Id. ¶ 37).

On January 5, 2016, the grand jury returned a true bill of indictment against plaintiff in this court for knowingly making false statements under oath related to his Form N-400 application, and knowingly making a false statement as to a material fact at the in-person USCIS interview. (Id. ¶ 39). On January 21, 2016, USCIS issued its decision denying plaintiff's application for failing to demonstrate good moral character based upon the charges against him for false statements. (Id. ¶ 40). Similar to the NOID, plaintiff was given 30 days to file a Form N-336 Request for Hearing challenging the denial of his re-opened Form N-400, and the decision was mailed to plaintiff's home residence. (Id. ¶¶ 41–42). Plaintiff again alleges that USCIS mailed its decision to his residence when it knew or should have known he was in federal custody violated federal law. (Id. ¶¶ 43–46).

On April 12, 2016, the grand jury returned a superseding bill of indictment against plaintiff. (Id. ¶ 47). Plaintiff's trial began April 27, 2016, and resulted in a guilty verdict against plaintiff on all counts. (Id. ¶¶ 49, 56). Plaintiff was sentenced to time served on June 2, 2016, and plaintiff

4

appealed his conviction to the United States Court of Appeals for the Fourth Circuit. (Id. ¶¶ 58–60). Although plaintiff's criminal appeal remained pending, the United States Marshal Service transferred plaintiff into ICE custody for removal proceedings. (Id. ¶ 61).

ICE detained plaintiff in an immigration facility in Jena, Louisiana, rather than an ICE facility nearer to Raleigh. (Id. ¶ 62). The Department of Homeland Security ("DHS") served on plaintiff notice to appear for removal proceedings dated June 3, 2016. (Id. ¶¶ 63–64). On June 29, 2016, plaintiff requested an immigration bond with the immigration court in Oakdale, Louisiana. (Id. ¶ 65). The immigration judge denied plaintiff's request for a bond, holding that plaintiff was subject to mandatory detention for committing fraud, even though those convictions had been appealed. (Id. ¶¶ 66–70). On November 14, 2016, the immigration judge held a master calendar hearing and sustained charges of removability against plaintiff based solely on the judgment in the criminal proceeding in this district. (Id. ¶ 71). On January 4, 2017, the immigration judge issued a final order of removal as to plaintiff. (Id. ¶ 73). Plaintiff timely appealed, but his appeal was dismissed by the Board of Immigration Appeals ("BIA") on June 15, 2017. (Id. ¶¶ 74–75).

On August 14, 2017, the Fourth Circuit vacated the judgment entered by this court against plaintiff, holding that the presiding judge's comments at trial were improper and denied plaintiff the opportunity for a fair and impartial trial, and that the presiding judge's jury instructions were insufficient to cure the error. (Id. ¶¶ 76–77; see id. ¶¶ 50–55). Following the Fourth Circuit's decision, the Office of Immigration Litigation filed a motion with the BIA to remand the case to immigration court, and the immigration judge administratively closed the prior order of removal against plaintiff on February 8, 2018. (Id. ¶¶ 78–82).

On May 7, 2018, plaintiff's criminal case in this district was retried. (Id. ¶ 84). The jury found plaintiff not guilty on all counts, and the court entered a judgment of acquittal. (Id. ¶¶ 84–85). Plaintiff's Form N-400 remains denied based on purported immigration fraud, despite his acquittal of all criminal charges which served as the basis for his denial. (Id. ¶ 86).

## COURT'S DISCUSSION

A.      Standard of Review

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Such motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Where a defendant raises a "facial challenge[] to standing that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts "the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge." Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018).When a defendant challenges the factual predicate of subject matter jurisdiction, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The nonmoving party in such case "must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id.

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level."

6

Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.      Analysis

        1.      De Novo Review of Plaintiff's Naturalization Application

Plaintiff first claims that the court should conduct a de novo review of his naturalization application because, despite not having an administrative hearing before an immigration officer, he "constructively exhausted" all administrative remedies available to him.

The judicial review provision pertinent to plaintiff's first claim provides as follows:

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c) (emphasis added); see Etape v. Chertoff, 497 F.3d 379, 386 (4th Cir. 2007) ("If the CIS denies an application, an applicant, after exhausting administrative remedies, may petition for de novo review in the district court.").

It is a "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Thetford Properties IV Ltd. P'ship v. U.S. Dep't of Hous. & Urban Dev., 907 F.2d 445, 448 (4th Cir. 1990) (quoting Meyers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51 (1938)). "When, as here, the exhaustion requirement is established by statute-in this case, the

7

interaction of Section 1421(a), which vests the attorney general with sole authority in naturalization matters, with Section 1421(c)-the requirement is 'mandatory, and courts are not free to dispense with [it].'"[3] Escaler v. U.S. Citizenship & Immigration Servs., 582 F.3d 288, 292 (2d Cir. 2009); Abuirshaid v. Johnson, 155 F. Supp. 3d 611, 616–17 (E.D. Va. 2015) (explaining that § 1421(c)'s exhaustion requirement "is cast in absolute language"); see Booth v. Churner, 532 U.S. 731, 741 n.6 (2001).

Plaintiff argues that the court should nonetheless hear his first claim because the hearing requirement for judicial review of naturalization applications is nonjurisdictional. See Shweika v. Dep't of Homeland Sec., 723 F.3d 710, 719–20 (6th Cir. 2013). Plaintiff also attempts to distinguish the exhaustion cases cited by defendant because they did not engage in a "jurisdictional" analysis. While the court accepts Shweika's cogent jurisdictional analysis, it does not accept the additional conclusion essential to plaintiff's "constructive exhaustion" theory — that § 1421(c) merely imposes "prudential" exhaustion requirements that may be disregarded by the court, and that case law regarding statutory exhaustion does not apply. As the Supreme Court has recently explained, "a rule may be mandatory without being jurisdictional." Fort Bend Cty., Texas v. Davis, 139 S. Ct. 1843, 1852 (2019). The statutory text and other provisions of § 1421 confirm such is the case here. See Escaler, 582 F.3d at 292; Abuirshaid, 155 F. Supp. 3d at 616–17.

Plaintiff's amended complaint unequivocally alleges that he did not have an administrative hearing on his naturalization application. (See Am. Compl ¶¶ 40–46). Indeed, there is no

---

[3]     Other circuits have reached similar conclusions regarding exhaustion under § 1421(c), albeit in unpublished decisions. Baptiste v. Attorney Gen. United States, 806 F. App'x 83, 86 (3d Cir. 2020); Huang v. Sec'y U.S. Dep't of Homeland Sec., 468 F. App'x 932, 935 (11th Cir. 2012); Idahosa v. Bureau of Immigration & Customs Enf't, 111 F. App'x 293, 294 (5th Cir. 2004). But see Eche v. Holder, 694 F.3d 1026, 1028 (9th Cir. 2012) (holding § 1421(c)'s exhaustion requirement is "prudential" and allowing a futility exception).

allegation he ever sought an administrative hearing or that an administrative hearing was denied to him following request for such a hearing. (See id.). Accordingly, plaintiff failed to exhaust his administrative remedies. Defendant's motion to dismiss plaintiff's claim for de novo hearing under § 1421(c) is granted.

2. Immigration and Nationality Act

Plaintiff alleges that defendants violated the INA by allowing HIS and FBI agents to "undermine" USCIS's authority to adjudicate plaintiff's naturalization application.

Federal law empowers employees designated by the Attorney General to "conduct examinations upon applications for naturalization" and "make a determination as to whether the application should be granted or denied, with reasons therefor." 8 U.S.C. § 1446(b), (d). Investigation into the application includes "a review of all pertinent records, police department checks, and a neighborhood investigation in the vicinities where the applicant has resided and has been employed, or engaged in business, for at least the five years immediately preceding the filing of the application." 8 C.F.R. § 335.1. "In the event that USCIS receives derogatory information concerning an applicant whose application has already been granted . . . , but who has not yet taken the oath of allegiance . . . , USCIS shall remove the applicant's name from any list of granted applications or of applicants scheduled for administration of the oath of allegiance, until such time as the matter can be resolved." 8 C.F.R. § 335.5.

Plaintiff alleges that USCIS was "improperly influenced" by HSI and FBI agents because they provided derogatory information to USCIS, which in turn caused USCIS to reopen and deny plaintiff's application for naturalization. (See Am. Compl. ¶¶ 19–26, 29, 40; Email Correspondence (DE 35-1)). The court is left with nothing but plaintiff's speculation that HSI and FBI improperly influenced his case, when all they did was provide USCIS with information that

plaintiff knowingly made false statements on his Form N-400. Defendants' motion to dismiss for failure to state a claim is granted.

3.      Administrative Procedure Act

Plaintiff argues that defendants' decision to deny his naturalization application was arbitrary and capricious under the APA because USCIS failed to follow its own regulations regarding service of administrative notices.

The APA mandates that "agency action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements." Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 414 (1971), abrogated by Califano v. Sanders, 430 U.S. 99 (1977); 5 U.S.C. § 706(2); W. Virginia v. Thompson, 475 F.3d 204, 209 (4th Cir. 2007). "Agency violations of their own regulations, whether or not also in violation of the Constitution, may well be inconsistent with the standards of agency action which the APA directs the courts to enforce." United States v. Caceres, 440 U.S. 741, 753–54 (1979).

Under applicable regulations governing service of notices, decisions, and other papers on parties to USCIS administrative proceedings, "[r]outine service consists of mailing the notice by ordinary mail addressed to the affected party and his or her attorney or representative of record at his or her last known address." 8 C.F.R. § 103.8(a)(1)(i). However, "[i]n any proceeding which is initiated by the Service, with proposed adverse effect, service of the initiating notice and of notice of any decision by a Service officer shall be accomplished by personal service."[4] Id. § 103.8(c)(1). Furthermore, "[i]f a person is confined in a penal or mental institution or hospital and

---

[4]      An exception to this rule applies to service of notices to appear in removal proceedings, the validity of which is not at issue here. 8 C.F.R. § 103.8(c)(1); see 8 U.S.C. § 1229(c).

is competent to understand the nature of the proceedings initiated against him, service shall be made both upon him and upon the person in charge of the institution or the hospital." Id. § 103.8(c)(2)(i).

The NOID following motion to reopen plaintiff's naturalization application is plausibly considered an "initiating notice" of an adverse decision. (See Am. Compl. ¶¶ 29–31). The written decision to deny plaintiff's naturalization application is plausibly a "notice of any decision by a Service officer." (See id. ¶¶ 40–41); see 8 U.S.C. § 1446(d). In addition, at the time these papers were served, USCIS plausibly knew that plaintiff was "sitting in jail." (See Email Correspondence (DE 35-1) at 1). Each of these facts imposes a separate legal obligation under applicable regulations for personal service on plaintiff. 8 C.F.R. § 103.8(c)(1), (c)(2)(i). Instead of personal service of the NOID and decision denying plaintiff's naturalization application at the jail at which plaintiff was located, the notice was mailed to plaintiff's residence. (See Am. Compl. ¶¶ 32, 42). Taking the facts alleged in the complaint as true, defendants' final decision denying plaintiff's naturalization application violated the APA by failing to personally serve the foregoing documents in accordance with procedural requirements under applicable regulations.

Defendants argue that § 103.8(c)(2)(i) does not apply because plaintiff failed to update his address. See 8 U.S.C. § 1305(a); 8 C.F.R. § 265.1. Such argument is unpersuasive for several reasons. First, defendants allegedly had actual knowledge that plaintiff was in jail. Second, to be applicable, § 103.8(c)(2)(i) merely requires that plaintiff be "confined" in a penal institution, not "reside" in a penal institution. Third, although defendants assert that they could not verify a change of address without plaintiff first sending in a form, the regulatory requirement mandating personal service of inmates avoids such inaccuracy. Fourth, even assuming § 103.8(c)(2)(i) is not applicable to plaintiff's case, defendants were independently required under § 103.8(c)(1) to

11

personally serve plaintiff with NOID and decision denying his naturalization application. Defendants' motion to dismiss is denied as to plaintiff's APA claim.

4.      Fifth Amendment

"No person shall be . . . deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V.  "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950).  "Personal service of written notice within the jurisdiction is the classic form of notice always adequate in any type of proceeding." Id. at 313.  "So long as the agency did not have reason to believe that the citation recipient could not be reached at that address, [] mailed notice would be sufficient" under the due process clause. Snider Int'l Corp. v. Town of Forest Heights, Md., 739 F.3d 140, 147 (4th Cir. 2014) (citing Robinson v. Hanrahan, 409 U.S. 38, 39–40 (1972) (per curiam)).  In Robinson, the United States Supreme Court found notice of forfeiture proceedings violated the Fourteenth Amendment's due process clause where "the State knew that appellant was not at the address to which the notice was mailed and, moreover, knew also that appellant could not get to that address since he was at that very time confined in the Cook County jail." 409 U.S. at 40.

Taking the facts alleged by plaintiff as true and drawing all reasonable inferences in his favor, this case is analogous to Robinson.  Despite possessing actual knowledge that plaintiff was not at his residence and could not reach his residence because he was "sitting in jail," defendants mailed plaintiff notice at his residence anyway.  (Email Correspondence (DE 35-1) at 1; see Am. Compl. ¶¶ 32, 42).

12

Defendants again argue that plaintiff had a statutory obligation to notify USCIS of his change in address to jail. See 8 U.S.C. § 1305(a); 8 C.F.R. § 265.1. Plaintiff's statutory obligation does not excuse defendants' constitutional obligation to provide notice "reasonably calculated" to apprise plaintiff of the pendency of the immigration proceeding. Mullane, 339 U.S. at 314. Where, as here, defendants plausibly had reason to believe plaintiff could not receive notice mailed to his residence, denying plaintiff's naturalization application on the basis of such constitutionally infirm notice violated due process. See Snider Int'l, 739 F.3d at 147. Defendants' motion to dismiss plaintiff's Fifth Amendment claim is denied.

5.  Estoppel

In order to assert equitable estoppel, "(1) the party to be estopped knew the true facts; (2) the party to be estopped intended for his conduct to be acted upon or acted in such a way that the party asserting estoppel had a right to believe that it was intended; (3) the party claiming estoppel was ignorant of the true facts; and (4) the misconduct was relied upon to the detriment of the parties seeking estoppel." McCrary v. Fed. Emergency Mgmt. Agency, 642 F. Supp. 544, 547 (E.D.N.C. 1986). When seeking to estop the government, two additional elements must be pleaded: "(1) that the party asserting estoppel must establish affirmative misconduct going beyond mere negligence, and (2) that not applying estoppel would result in a serious injustice, and that the public will not be unduly burdened by the imposition of estoppel." United States v. Lancaster, 898 F. Supp. 320, 323 (E.D.N.C. 1995) (citing United States v. Vanhorn, 20 F.3d 104, 112 (4th Cir. 1994)).

Plaintiff seeks to estop defendants from denying his naturalization application based on lack of good moral character because of his being in federal custody for allegedly making false statements on his Form N-400 and during his USCIS interview. (Am. Compl. ¶¶ 113–17). Plaintiff plausibly alleges that the government knew its charges of knowing misrepresentation

13

were not meritorious. (See id. ¶¶ 27–28; Email Correspondence (DE 35-1) at 1). However, plaintiff — the party claiming estoppel — was never ignorant of the true facts. Plaintiff knew that he did not knowingly make a false statement on his Form N-400 and during his USCIS interview. (See id. ¶¶ 13–15, 18, 22–24). Moreover, plaintiff never relied upon the charges that he knowingly made false representations, but vigorously contested such allegations in two separate trials. (Id. ¶¶ 47–60, 76–77, 84–85). Finally, not applying estoppel would not result in serious injustice. Plaintiff, a lawful permanent resident, may file another application for naturalization upon termination of the removal proceedings against him. See 8 U.S.C. § 1429; De Dandrade v. United States Dep't of Homeland Sec., 367 F. Supp. 3d 174, 185 (S.D.N.Y. 2019); (Am. Compl. ¶ 1). Defendants' motion to dismiss is granted as to plaintiff's estoppel claim.

### CONCLUSION

Based on the foregoing, defendants' motion to dismiss plaintiff's amended complaint (DE 28) is GRANTED IN PART and DENIED IN PART. Plaintiff's 8 U.S.C. § 1421(c), INA, and estoppel claims are DISMISSED WITHOUT PREJUDICE. Plaintiff's APA and Fifth Amendment claims remain. The court's initial order on planning and scheduling will follow.

SO ORDERED, this the 14th day of August, 2020.


LOUISE W. FLANAGAN
United States District Judge